237 A.2d 547.

JOHN E. BRADSHAW *vs.* ROBERT J. CAMPBELL.
LOIS E. BRADSHAW *vs.* ROBERT J. CAMPBELL.
LOIS E. BRADSHAW *vs.* IRENE M. CAMPBELL.
JOHN E. BRADSHAW *vs.* IRENE M. CAMPBELL.

JANUARY 22, 1968.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

POWERS, J. These are the defendants' appeals from the judgments of a trial justice granting the plaintiffs' motions for new trials in four companion civil actions for negligence.

The personal injuries for which the wife sues to recover and her husband per quod, allegedly arose out of an incident on May 4, 1962 in the parking lot of a supermarket located at Governor Francis shopping center in Warwick. According to the testimony of plaintiff and her witnesses, defendant wife, operating her husband's car, struck Mrs. Bradshaw on the left side as defendants' car pulled away from the patrons' loading area of the supermarket.

According to the testimony of Mrs. Campbell and her

witnesses, Mrs. Bradshaw came in contact with the car by tripping, stumbling or a dizzy spell at a time when the car was being loaded and was not moving.

As the trial justice observed in passing on the motions, the cases turned squarely on the issue of credibility. Involved in this issue was the question of whether defendants' car wheels were pointed at an angle to the left as Mrs. Bradshaw approached the car, as she testified, or pointed straight ahead as testified to by defendant wife and an important witness.

The trial consumed several days during the course of which the jury viewed the premises in question. At the conclusion of the trial the jury returned a verdict for defendant in each case.

In the course of conversation with members of the jury after the verdicts had been returned, counsel for plaintiffs learned that during the trial the foreman and another member of the jury had gone to the supermarket parking lot in an effort to satisfy themselves as to which way defendants' car wheels had been pointing immediately prior to impact. He further learned that the foreman's wife had accompanied him on his extrajudicial view.

Within the time authorized by law, plaintiffs filed motions for new trials on the four usual grounds and the further ground that the unauthorized view and experiments constituted conduct on the part of a juror so improper as to taint the jury's verdicts. In support of this latter ground, plaintiffs attached affidavits of the foreman, his wife and the second juror.

The trial justice reviewed the evidence, passed on credibility, and refused to disturb the jury's verdicts on the first four grounds set forth in the motions for new trials. Indeed, he emphasized his conviction that as to these grounds, the jury's verdicts should not be disturbed.

As to the fifth ground, however, the trial justice was constrained to agree with plaintiffs' contention, saying in part,

"Now, here we have the Foreman of a jury who took a view and was met with a conflict during the testimony as to what angle the wheels of the defendant's automobile were at, immediately prior to this accident. And that was an important issue in the case. It may not have been a critical or ultimate issue, but it was important, because it touched again on this credibility problem which infected this case, a real credibility problem all the way through it. And I use the word 'infected' because any case that's got diametrically opposed versions as this one had is infected."

In granting plaintiffs' motions, the trial justice correctly refused to consider the affidavits of the two jurors. *Tucker* v. *Town Council*, 5 R. I. 558 (1859); *Phillips* v. *Rhode Island Co.*, 32 R. I. 16, 78 Atl. 342 (1910); *Palumbo* v. *Garrott*, 95 R. I. 496, 188 A.2d 371 (1963).

His judgment on the new trial motions is based solely on the affidavit of the wife of the jury's foreman and its validity is the only issue before us. Her sworn statements are that she accompanied her husband and that "* * * he examined the layout of the area and particular features thereon; and that he performed the experiment of driving a car up to the grocery loading conveyor to determine which way the wheels would be turned while stopped at said conveyor."

The trial justice based his holding on the authority of *Garside* v. *Ladd Watch Case Co.*, 17 R. I. 691, 24 Atl. 470 (1892). There, during the course of the trial, four or five jurors visited the defendant's premises for the purpose of examining a trap door, the nature of which was in dispute. No authorized view was taken by the jury, although the defendant's request for one was twice refused by the trial justice. In the course of their unauthorized inspection, the jurors were observed by several of the defendant's employees.

After a substantial verdict had been returned for the plaintiff, the defendant learned of the jurors' extrajudicial

inspection. It sought and obtained a new trial on the grounds that the misconduct of the jurors was of such a character as to deprive defendant of a fair and impartial trial. In support of its motion, the defendant furnished affidavits from its employees, who had observed the jurors' examination of the premises, as well as affidavits from the jurors concerned.

The court rested its decision on the sworn statements of the employees, impliedly rejecting those of the jurors as being inadmissible by reason of established public policy. Relying then on the sworn statements of others, the court noted that the examination of the trap door by the jurors was an attempt to determine by outside evidence where the truth lay with regard to a disputed fact. Such conduct, the court concluded, was of such character as to corrupt the jury's verdict and called for a new trial.

The defendants distinguish the case at bar from *Garside* in that here the jury had taken an authorized view so that all members of the panel were familiar with the premises, whereas in the case relied on no view had been taken so that the jurors in the *Garside* case who had not participated in the extrajudicial activities of their fellow jurors were at a disadvantage not present here. If the foreman and his fellow juror had done nothing more than view the premises for a second time, albeit unauthorized, we would have no hesitancy about accepting the distinction for which defendants contend. Although improper and of such nature as to call for stern censure, we think that mere duplication would fall within the class of minor errors which this court in *Garside* was of the opinion did not warrant a new trial.

There is present here, however, a more troublesome question, namely, the wife's sworn statement that in her presence her husband, the jury foreman, conducted an experiment for the purpose of determining from the layout of the premises whether, parked at the loading conveyor, defendants' car wheels would be pointing at an angle to the left.

This information would constitute evidence not adduced at the trial and known only to the foreman and, presumably, his accompanying fellow juror. It is clearly analogous to the examination of the trap door in *Garside* referred to by this court in that case as "outside evidence."

The defendants, however, contend that while the wife's statement that she accompanied her husband to the parking lot is something of which she had personal knowledge, her statement that he conducted an experiment must necessarily be hearsay. They argue that whatever the foreman may have done in the course of his unauthorized visit, the purposes sought to be achieved could only be known by the wife if told to her by her husband. If found to be hearsay, of course, this portion of the wife's affidavit would be inadmissible. See *Phillips* v. *Rhode Island Co., supra,* and *Bourre* v. *Texas* Co., 51 R. I. 254. 154 Atl. 82, 86 (1931); *Guadagno* v. *Folco,* 62 R. I. 404, 6 A.2d 450 (1939), as well as *Palumbo* v. *Garrott, supra.*

The question thus presented is not one to be dismissed out of hand. It troubled the trial justice. Commenting on the wife's reference to an experiment he stated, "Now, maybe she takes a little too much for granted in that, but I'm going to accept that affidavit and accept it as establishing this fact: that during the trial she went with her husband out there and he did jockey his car around in that loading area some, and wasn't just out there buying groceries."

An analysis of the question's implication, however, persuades us that the trial justice erred. Clearly, although the foreman's spouse was present and had personal knowledge of her husband's visit to the shopping parking lot and was aware that he was maneuvering the car for the purpose of making some determination, she could not have known the purpose of what he did or even why they were at the parking lot of the shopping center unless she had been told of its connection with the case as well as what her husband was hoping to prove.

We conclude therefore that her sworn statements regarding the *experiment* constituted hearsay evidence and as such could not properly be received.

The remaining portions of her affidavit which do not constitute hearsay, namely, that she accompanied her husband and was aware of his maneuvering of the car, are lacking that probative force essential to establish such misconduct as would warrant the granting of the motions for new trials.

In each case the defendant's appeal is sustained, the judgment appealed from is reversed, and each case is remitted to the superior court for entry of judgment on the verdict.

Motion for leave to file petition for reargument denied.

*Howard R. Haronian,* for plaintiffs.

*Martin M. Zucker,* for defendants.